UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APPLIED MATERIALS, INC., RANI BORKAR, JUDY BRUNER, XUN (ERIC) CHEN, AART J. de GEUS, GARY E. DICKERSON, THOMAS J. IANNOTTI, ALEXANDER A. KARSNER, ADRIANNA C. MA, YVONNE McGILL, and SCOTT A. McGREGOR,<br><br>　　　　　　Defendants. | CIVIL ACTION NO.<br><br><br>**COMPLAINT** |

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

**PRELIMINARY STATEMENT**

1.　　In 2006, in the wake of the Enron, WorldCom and Tyco options-related scandals, the Securities and Exchange Commission ("SEC") implemented a new set of rules dictating how companies must disclose executive and director compensation to their stockholders. Among these requirements, the SEC mandated that companies disclose the "grant date fair value" of stock awards and option awards in their proxy statements following the fiscal year in which such awards were granted. This requirement has been codified in Regulation S-K, 17 C.F.R. § 229 (Item 402 (c)(2)(v) and (vi)).

2.　　In doing so, the SEC affirmed that full disclosure of executive and director compensation decisions is important for investors to know at the time – or soon after – those

decisions are made. Where that compensation is an unconditional cash award to an executive or director, the disclosure is transparent. Where the compensation is, however, an award of options or a complex equity instrument that expires or vests years later, the value of the compensation award on the date of grant is somewhat opaque. Providing the "grant date fair value" of such compensation in the proxy statement using approved accounting methods makes such compensation transparent to investors by assigning a dollar value to the awards.

3. But this rule mandating that companies provide the grant date fair value of equity-pay instruments is not as simple as disclosing the maximum possible award value. Instead, to determine the fair value of such awards on the date of grant often requires the use of mathematical models. Such models in turn require the implementation of assumptions concerning such awards. Such assumptions can include, but are not limited to: expected volatility, interest rates, and expected dividend yields.

4. Company managers have discretion over the assumptions that are fed into the models. Moreover, companies are incentivized to manipulate these assumptions to reduce the reported grant date fair value of equity awards. Indeed, many studies have demonstrated the selective discounting of such awards, thereby making the compensation appear less than it truly is. *See*, *e.g.*, Eli Bartov et al., Managerial Discretion and the Economic Determinants of the Disclosed Volatility Parameter for Valuing ESOs, 12 Rev. Acct. Stud. 155, 158 (2007) (finding in a sample of over 9000 firm-years from 1998 to 2004 that firms opportunistically selected volatility measures to reduce reported compensation); Preeti Choudhary, Evidence on Differences Between Recognition and Disclosure: A Comparison of Inputs to Estimate Fair Values of Employee Stock Options, 51 J. Acct. & Econ. 77, 91 (2011) (finding that opportunistic selection of volatility assumptions to minimize option value and compensation cost increased after stock option expensing was mandated in 2004); Leslie Davis Hodder et al., Employee Stock

Option Fair-Value Estimates: Do Managerial Discretion and Incentives Explain Accuracy?, 23 J. Contemp. Acct. Res. 933, 938-39 (2006) (finding use of discretion to reduce pro forma earnings among a subset of firms).

5. To police such manipulation, at the same time the SEC required the disclosure of the grant date fair values of such equity-based awards in 2006, the SEC also required that companies disclose the model and assumptions they use to calculate such values. This requirement is codified in Instruction 1 to Regulation S-K, 17 C.F.R. § 229 (Item 402 (c)(2)(v) and (vi)). Using these assumptions, it is possible for analysts (and shareholders) to re-run the calculation to confirm the disclosed grant date fair values by using a free online pricing calculator.[1]

6. But despite this SEC requirement, Defendant Applied Materials Inc. ("Applied Materials" or the "Company") does not disclose such information. *For every year since at least fiscal 2008, Applied Materials has represented in its proxy statements that the assumptions used to calculate its most highly-compensated executives' equity-based compensation are available in the corresponding annual report on Form 10-K provided with the proxy statement. But that has never been true.* From fiscal 2008 to fiscal 2018, the Company did not even divulge the type of model used to value this compensation, and instead it represented that such valuations were arrived at by simply using the price of the stock on the date of grant, which is verifiably false as demonstrated below. Since fiscal 2019, the Company has claimed to use a Monte Carlo simulation, but it continues to withhold the assumptions it makes with this model. These omissions are all the more glaring because Applied Materials does provide the model and assumptions used to calculated *employee purchases* of common stock under its Employee Stock

---

[1] For example, Radford, a compensation consulting company, provides such a calculator. https://www.radford.com/home/portal/underwater_exchange_calculator.asp

Purchase Plans, and these are disclosed in the exact place in the Form 10-K where Applied Materials should (and claims it does) disclose the assumptions regarding executive compensation.

7. A review of the Form 10-Ks from these years, including the most recent Form 10-K published on December 17, 2021 in advance of the upcoming March 10, 2022 annual stockholders meeting, shows that Applied Materials has failed to provide this information to stockholders.

8. Plaintiff brings this action to rectify this failure to provide essential information concerning the compensation granted to Applied Materials' most highly-compensated executives and directors. Plaintiff also brings this action to determine whether Defendants have failed to accurately disclose the fair value of their compensation, which can only be done by knowing the assumptions Applied Materials makes to calculate the grant date fair values.

## JURISDICTION

9. The jurisdiction of this court is founded upon the application of questions of federal law pursuant to § 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

10. The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. §78n(a) and Rule 14a-3, 17 C.F.R. § 240.14a-3, Rule 14a-9, 17 C.F.R. § 240.14a-9, Schedule 14A, 17 C.F.R. § 240.14a-101, and Regulation S-K, 17 C.F.R. § 229, of the United States Securities and Exchange Commission (the "SEC").

## THE PARTIES

11. Plaintiff Shiva Stein is a stockholder of Defendant Applied Materials, and she has been such since June 11, 2014, and continuously to date.

12. Applied is a Delaware corporation with its principal place of business in Santa Clara, California. It is authorized to do business in the State of New York and is found in New York County, as it states in its filing with the New York Secretary of State. Its stock is traded on the Nasdaq Global Select Market under the symbol AMAT. It is in the computer technology business. Its fiscal year ends on the last Sunday of October so that its last fiscal year ended October 31, 2021.

13. Defendants Rani Borkar, Judy Bruner, Xun (Eric) Chen, Aart J. de Geus, Gary E. Dickerson, Thomas J. Iannotti, Alexander A. Karsner, Adrianna C. Ma, Yvonne McGill, and Scott A. McGregor are all the members of the Applied board of directors. Defendant Gary E. Dickerson is also Applied's president and chief executive officer.

## WRONGFUL ACTS AND OMISSIONS

14. The compensation of corporate directors and key officers is a matter of direct and deep concern to shareholders in the exercise of their right to vote. The SEC addresses this concern with detailed, explicit disclosure rules and regulations. This complaint challenges Applied Materials' proxy statements for omitting information specifically required by those rules and regulations and providing misinformation.

### The False and Misleading 2022 Proxy Statement

15. While, as demonstrated further below, Applied Materials has failed to accurately and adequately disclose how it calculates the equity compensation awarded to its top executive officers since at least fiscal 2008, this Action is principally concerned with remedying the January 26, 2022 proxy statement furnished in advance of the March 10, 2022 annual stockholders meeting (the "2022 Proxy Statement").

16. In the 2022 Proxy Statement, the board of directors solicits the stockholders' proxies to vote in favor of the election of the ten Defendant directors named therein, including

5

Defendant Dickerson, Applied Materials' President and CEO, and in favor of Dickerson's fiscal 2021 compensation and that of the other named executive officers ("NEOs") on a non-binding, advisory basis under §14A of the Exchange Act, 15 U.S.C. §78n-1 (the "say-on-pay vote").

17. Section 14(a) of the Exchange Act makes it unlawful for any person to solicit or to permit the use of his name to solicit any proxy in contravention of the SEC's rules and regulations.

18. SEC Rule 14a-9 forbids the solicitation of a proxy by means of a proxy statement containing materially false or misleading misrepresentations or omissions.

19. SEC Rule 14a-3(a) requires that public companies may not solicit stockholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A." It is a violation of § 14(a) of the Exchange Act to misrepresent or to omit information specifically required by the SEC's rules and regulations.

20. Because the 2022 Proxy Statement solicits action to be taken at the meeting for the election of directors, SEC Schedule 14A (Item 8(a)) requires the 2022 Proxy Statement to furnish the information required by SEC Reg. S-K (Item 402), concerning Director and Executive Compensation.

21. In addition, 15 U.S.C. §78n-1 requires proxy statements for which the SEC requires compensation disclosure to include a separate resolution for a stockholder vote on executive compensation as disclosed pursuant to SEC Reg. S-K (Item 402), i.e. the "say-on-pay vote."

22. SEC Schedule 14A (Item 8(a)) and Reg. S-K (Item 402(c)(1)) require such proxy statements to report the compensation of the NEOs for the company's last three completed fiscal years in the form of the Summary Compensation Table.

23. SEC Reg. S-K (Item 402(c)) requires strict compliance with the Summary Compensation Table so that it can accomplish its stated purpose of helping stockholders understand how compensation components relate to each other and use the Table to compare compensation from year to year and from company to company. SEC Release No. 8732A, *Executive Compensation and Related Person Disclosure*, 2006 WL 2589711 at *21 (Sept. 8, 2006). SEC Release No. 8732A at *24 and SEC Reg. S-K (Item 402 (c)(2)(v) and (vi)) both require stock awards to be reported in column (e) and option awards to be reported in column (f) of the Summary Compensation Table.

24. Instruction 1 to Item 402(c)(2)(v) and (vi) requires for awards reported in columns (e) and (f) the inclusion of a footnote disclosing all assumptions made in the valuation by reference to a discussion of those assumptions in the registrant's financial statements, or discussion in the Management's Discussion and Analysis. The sections so referenced are deemed part of the disclosure provided pursuant to this Item. FASB ASC Topic 718-10-50-2(f)(2) requires disclosure of those assumptions. FASB ASC Topic 718 means Financial Accounting Standards Board Accounting Standards Codification. Topic 718 covers the accounting and disclosure standards concerning stock and option compensation. The SEC requires entities under its jurisdiction to comply with FASB's standards and interpretations.

25. The disclosure of the NEOs' compensation in the Summary Compensation Table in the 2022 Proxy Statement is in contravention of SEC Schedule 14A (Item 8(a)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A.

26. The 2022 Proxy Statement represents that in fiscal year 2021, Applied awarded its NEOs stock awards that were based in part on relative total shareholder return ("TSR") measured against the S&P 500. In the table of Summary Compensation Table in the 2022 Proxy

Statement, it reports that the grant date fair value of these stock awards, awarded to all five NEOs was $58,564,647.

27. The 2022 Proxy Statement represents that in fiscal year 2020, Applied awarded its NEOs stock awards that were based in part on relative TSR measured against the S&P 500. In the Summary Compensation Table in the 2022 Proxy Statement, it reports that the grant date fair value of these stock awards, awarded to all five NEOs was $26,365,454.

28. The 2022 Proxy Statement represents that in fiscal year 2019, Applied awarded its NEOs stock awards that were based in part on relative TSR measured against the S&P 500. In the Summary Compensation Table in the 2022 Proxy Statement, it reports that the grant date fair value of these stock awards, awarded to all five NEOs was $22,450,696.

29. Footnote 2 to the Summary Compensation Table says:

> Amounts shown do not reflect compensation actually received by the executive officer. Instead, the amounts reported represent the aggregate grant date fair value of target stock awards granted in the respective fiscal years, as determined pursuant to ASC 718 (but excluding the effect of estimated forfeitures for performance-based awards). For fiscal 2021, the grant date fair value of the maximum number of stock awards that may be earned by each NEO was as follows: Mr. Dickerson: $44,453,109; Mr. Durn: $13,063,767; Dr. Raja: $12,357,270; Mr. Salehpour: $5,985,380; and Dr. Nalamasu: $4,015,178. See "Fiscal 2021 Equity Awards" on page 38 for more information regarding the stock awards, including the non-recurring performance-based Value Creation Awards awarded to Mr. Dickerson, Mr. Durn and Dr. Raja during fiscal 2021. ***The assumptions used to calculate the value of awards are set forth in Note 14 of the Notes to Consolidated Financial Statements included in Applied's Annual Report on Form 10-K for fiscal 2021 filed with the SEC on December 17, 2021.***

30. SEC Reg. S-K (Item 402(d)) also requires that proxy statements include a table of Grants of Plan-Based Awards. In the 2022 Proxy Statement, Footnote 3 to the Grants of Plan-Based Awards for Fiscal 2021 table concerning the "Grant Date Fair Value of Stock and Option Awards," repeats:

Amounts shown do not reflect compensation actually received by the NEOs. Instead, the amounts represent the aggregate grant date fair value of the awards as determined pursuant to ASC 718 (but excluding the effect of estimated forfeitures for performance-based awards). ***The assumptions used to calculate the awards' value are set forth in Note 14 of the Notes to Consolidated Financial Statements included in Applied's Annual Report on Form 10-K for fiscal 2021 filed with the SEC on December 17, 2021.***

31.     Both of these bolded statements are false. There are no "assumptions used to calculate the awards' value … in Note 14 of the Notes to Consolidated Financial Statements included in Applied's Annual Report on Form 10-K for fiscal 2021 filed with the SEC on December 17, 2021." And these assumptions are not provided by Applied Materials anywhere else. As a result, investors are left in the dark as to how Applied Materials determines the fair value of the compensation provided to the Company's most senior executives in violation of SEC regulations.

32.     Elsewhere, when disclosing director compensation, the 2022 Proxy Statement also references "assumptions used to calculate the value of stock awards" in footnote 1 to the Director Compensation for Fiscal 2021 Table. These stock awards are in the form of non-discretionary grants of restricted stock units. While it is not clear why determining the fair value of such awards requires the use of complex mathematical models and assumptions (these awards are not dependent on, for example, TSR performance goals), the fiscal 2021 Form 10-K also contains no assumptions or explanation as to what model is being used to calculate such fair values.

33.     In the 2021 Form 10-K, Applied Materials states that it uses a Monte Carlo simulation to calculate the grant date fair values of the TSR based Performance Shares. Pursuant to FASB ASC Topic 718, the assumptions for a Monte Carlo simulation are (a) expected

9

volatility, (b) dividend yield, (c) risk-free interest rate, and (d) expected life.[2] But none of these assumptions (or any others) are disclosed in the 2021 Form 10-K.

34. Applied Materials' management selects and quantifies those assumptions. But (as discussed above in paragraph 4) authoritative surveys reveal that corporate managements tend to select assumptions that reduce reported executive compensation. Disclosure of those assumptions is material because the technology is available to confirm the results and re-run the analysis with different assumptions. SEC rules and regulations and the accounting standard require those quantitative disclosures. FASB ASC Topic 718-10-50-2(f)(2). Their omission contravenes the aforesaid SEC regulation, and the 2022 proxy solicitation violates §14(a) of the Exchange Act.

35. Because of these contraventions of the SEC rules and regulations, the 2022 Proxy Statement is in violation of §14(a) of the Exchange Act. As a result, the Court should enjoin the election of the directors and the non-binding, advisory vote on the named executive officers' fiscal 2021 compensation. In addition, to the extent discovery reveals that Defendants have understated the grant date fair value of executive compensation, the Court should reduce Defendants' compensation and impose damages.

36. Also, the Court should order corrective disclosures to Applied Material's 2022 Proxy Statement. That Proxy Statement must include a Summary Compensation Table

---

[2] "A Monte Carlo simulation model projects future stock prices for the granting company and its peers based upon a risk-neutral stock price framework (similar to the financial modeling used for other employee equity such as BlackScholes or a binomial model). In fact, using identical assumptions, a Monte Carlo simulation would yield identical results to a Black-Scholes or binomial model. However, a Monte Carlo simulation allows for greater flexibility and customization of the assumptions and plan design parameters which is necessary to value a Relative TSR program."
https://www.radford.com/home/press_room/pdf/Radford_alert_RelativeTSR_09232009.pdf

disclosing the assumptions made to value the named-executive officers' 2019, 2020 and 2021 compensation and the method used to arrive at the grant date fair values of such compensation.

37. In addition, while it is perhaps only possible to remedy this problem going forward, it should be made clear the Applied Materials has never (or at least since fiscal 2008) adequately or accurately disclosed how it calculates its named executive officers' compensation.

**Applied Materials' History of Failing to Accurately Disclose Executive Compensation**

38. The disclosure in the 2021 Form 10-K concerning Applied Materials' use of a Monte Carlo simulation to calculate named executive officer compensation was first included in the Company's 2019 Form 10-K concerning fiscal 2019 compensation. This additional, but unhelpful, explanation of how the grant date fair values of Performance Shares were calculated with regard to fiscal 2019 compensation is below:

> The fair value of the portion of the awards subject to targeted levels of adjusted operating margin is estimated on the date of grant. If the performance goals are not achieved as of the end of the performance period, no compensation expense is recognized and any previously recognized compensation expense is reversed. The expected cost is based on the awards that are probable to vest and is reflected over the service period and reduced for estimated forfeitures.
>
> ***The fair value of the portion of the awards subject to targeted levels of TSR is estimated on the date of grant using a Monte Carlo simulation model.*** Compensation expense is recognized based upon the assumption of 100% achievement of the TSR goal and will not be reversed even if the threshold level of TSR is never achieved, and is reflected over the service period and reduced for estimated forfeitures.

39. This was the first time Applied Materials revealed that any kind of mathematical model was being used to determine the fair value of the Performance Shares. It disclosed that part of the grant date fair value of Performance Share awards was being calculated using a Monte Carlo simulation due to the use of a performance goal of "targeted levels of" Total Shareholder Return in fiscal 2019. But fiscal 2019 was not the first time the Company has used TSR as a goal for its Performance Shares. It also used this as a performance goal in fiscal 2012, fiscal

11

2013, fiscal 2015, and fiscal 2016, but none of these years disclosed the use of a Monte Carlo simulation to perform the grant date fair value calculation of executive awards.

40. In addition, like with the 2022 Proxy Statement, the 2020 and 2021 Proxy Statements also stated in footnotes to their compensation tables that the assumptions used to calculate executive compensation were in the corresponding Form 10-Ks for those years, but no such assumptions were included.

41. Before fiscal 2019, these disclosures were even more obscure. Prior to fiscal year 2006, Applied Materials almost exclusively awarded its top executives equity compensation in the form of stock options, but in fiscal 2006, the Company began providing its executives with "Performance Shares" that vest over a period of several years and are subject to certain performance goals that are determined at the time of the grant of the award. While the performance goals have been different as the years have passed, from fiscal 2006 to fiscal 2018, the Company always reported in its Form 10-Ks that the fair value of these awards has always been calculated the same way: The Company multiplies the grant date price of the stock underlying the award by the target number of shares. But this has never been true.

42. To illustrate, the Company's fiscal 2008 Form 10-K stated,

> Beginning in fiscal 2007, Applied initiated a performance-based equity award program for named executive officers and other key employees. The Human Resources and Compensation Committee of Applied's Board of Directors (the Committee) approved grants of 1,565,000 and 1,950,000 performance-based restricted stock units under this program for fiscal 2008 and fiscal 2007, respectively. The Committee also approved the issuance to Applied's President and Chief Executive Officer of performance-based restricted stock in the amounts of 100,000 and 150,000 shares for fiscal 2008 and fiscal 2007, respectively, at $0.01 per share. These awards vest only if specific performance goals set by the Committee are achieved. The goals require the achievement of specified levels of Applied's annual operating profit as compared to Applied's peer companies and also that the officer or key employee remain an employee of Applied through the vesting date. ***The fair value of the performance-based restricted stock awards and restricted stock is estimated using the fair value of Applied common stock***

12

*on the date of the grant* and assumes that the applicable performance goals will be achieved.

43. Such disclosures stating that the fair value of these awards was determined "using the fair value of Applied common stock on the date of the grant" was never true, but Applied Materials recycled this language in its Form 10-Ks for the next decade. Applied Materials said nothing else about how the grant date fair values of these awards were determined. The fact that the grant date prices were not the basis for the fair values of these awards can be demonstrated by comparing the stock prices on the date of grants for these awards with the stock price as determined by dividing out the number of shares underlying such awards:

| Grant Date of Performance Shares[3] | Grant Date Open Price | Grant Date Low Price | Grant Date High Price | Grant Date Close Price | Price Per Share Used To Determine Grant Date Fair Value of Target Awards In Proxy Tables |
|---|---|---|---|---|---|
| 1/25/2007 | 17.66 | 17.44 | 17.88 | 17.48 | $17.08 |
| 12/10/2007 | 18.37 | 18.04 | 18.75 | 18.64 | $18.09 |
| 12/6/2010 | 13.03 | 12.9 | 13.04 | 13.019 | $12.32 |
| 12/5/2011 | 11.01 | 10.86 | 11.0799 | 10.99 | $11.70 |
| 12/5/2012 | 10.87 | 10.77 | 10.93 | 10.8 | $11.71 |
| 12/8/2014 | 25.12 | 24.04 | 25.25 | 24.24 | $29.14 |
| 12/7/2015 | 19.1 | 18.88 | 19.15 | 18.91 | $23.34 |
| 12/1/2016 | 32.14 | 29.85 | 32.18 | 30.1 | $28.92 |
| 12/14/2017 | 51 | 50.57 | 51.81 | 51.31 | $50.15 |

44. As can been seen in the chart above, on every award date except for December 10, 2007, the grant date stock price could not have served as the basis for the grant date fair value since the price per share used to determine the grant date fair value is outside of the window between the grant date low price and the grant date high price. Often the difference

---

[3] These dates are for the typical annual awards of Performance Shares granted to the named-executive officers each year and exclude certain special awards to particular executives in particular years for simplicity's sake.

13

between these stock prices is several dollars, which when applied to the tens of the thousands of shares underlying the awards at issue, provides very different values for the awards.

45. Further confirming that the grant date prices are not the basis for these grant date fair value calculations is the fact that starting with the 2016 Proxy Statement and continuing to present, Applied Materials has provided a "target value" or "total value" for such awards in a separate part of the proxy statement's Compensation Discussion & Analysis, and in a footnote to these charts it confirms that the "target value" or "total value" *is* based on the "closing price of Applied stock" on the date of grant. It states in another footnote to these tables that such values are not the same as the "grant date fair value determined pursuant to Accounting Standards Codification 718." But it says nothing further about how such grant date fair values were calculated.

46. Final confirmation that such grant date fair values were not determined based on a simple calculation involving the grant date stock price is that in each proxy statement when it says how the Company calculates the grant date fair value of such awards, it refers stockholders to the Form 10-K, but it also notes that "[t]he assumptions used to calculate the value of awards are set forth in" the Form 10-Ks corresponding to those years. But not only are there no assumptions provided in those Form 10-Ks concerning the valuation of the performance shares, if the grant date fair value were simply based on the stock price on the date of grant, there would be no need for assumptions of any kind. Assumptions such as expected volatility, interest rates, and expected dividend yields are only necessary when a mathematical model such as Black-Scholes or a Monte Carlo simulation is being used to calculate the grant date fair value. They are not necessary for a simple bit of multiplication.

47. In sum, starting in fiscal 2007, Applied Materials' proxy statements have stated the grant date fair values of performance shares in both the Summary Compensation Table and

the Grant of Plan-Based Awards Table, but they have never explained how these values are calculated.  Instead, they have referred stockholders to the Company's Form 10-Ks for such disclosures, but until fiscal 2019, these Form 10-Ks merely said the fair values were based on the grant date stock price.  This is impossible and disproven by the fact that (1) the grant date stock price has always been different from the price per share derived from the values in the Summary Compensation Table and the Grant of Plan-Based Awards Table; (2) since the 2016 Proxy Statement, Applied Materials' disclosures concerning the "target price" or "total price" of such awards shows this distinction; and (3) the Company's reference to "assumptions" in the proxy statements makes no sense unless the grant date fair values of such awards are being calculated using a complicated mathematical model.  Then, in fiscal 2019 and continuing with the 2022 Proxy Statement, Applied Materials has stated that part of its calculation of executive compensation includes a Monte Carlo analysis, but it fails to disclose the assumptions made with regard to that analysis in contravention of SEC regulations.  This Action seeks to remedy this decade and a half of false disclosures to the extent possible.

## COUNT I
### (Exchange Act Violations in the Election of Directors Proposal)

48.     Plaintiff incorporates all of the above paragraphs as if stated herein.  The above paragraphs state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

49.     As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law.  She will suffer irreparable harm in the form of an uninformed vote on the director Defendants on March 10, 2022 if no action is taken to ameliorate this harm.

50.     To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by SEC Schedule 14A (Item 8(a)), SEC

Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A, and which explains what assumptions are used to determine the grant date fair value of the directors' compensation, if any.

51.     Consequently, Applied Materials should be enjoined from presenting the director proposal for a stockholder vote at the March 10, 2022 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Applied Materials stockholder in connection with these proposals.

## COUNT II
### (Exchange Act Violations in the Proposal to Approve the Compensation of Applied Materials' Named Executive Officers)

52.     Plaintiff incorporates all of the above paragraphs as if stated herein.  The above paragraphs state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

53.     As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law.  She will suffer irreparable harm in the form of an uninformed "say-on-pay" vote on March 10, 2022 if no action is taken to ameliorate this harm.

54.     To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by SEC Schedule 14A (Item 8(a)), SEC Reg. S-K (Items 402(c)(1) and 402(c)(2)(v) and (vi)) and Instruction 1 thereto, and SEC Release No. 8732A.

55.     Consequently, Applied Materials should be enjoined from presenting the "say-on-pay" proposal for a stockholder vote at the March 10, 2022 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Applied Materials stockholder in connection with these proposals.

**JURY DEMAND**

56. Plaintiff demands trial by jury.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands the following relief:

A. Disclosure of the assumptions made in determining the grant date fair values of stock-based compensation of the NEOs in fiscal 2019, 2020, and 2021, in conformity with FASB ASC Topic 718 and SEC Reg. S-K.

B. Reduction of the Defendants' compensation to the extent understated in the Company's proxy statements;

C. Damages from the unlawful 2022 Proxy Statement;

D. An award of plaintiff's attorneys' fees to her counsel and expenses for accountants and other experts; and

E. Such other and further relief, whether similar or different, as is just or equitable.

Dated: February 3, 2022                     **BARRACK, RODOS & BACINE**

By: _/s/ A. Arnold Gershon_
A. Arnold Gershon
Michael A. Toomey
640 8th Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Fax: (212) 688-0783
agershon@barrack.com
mtoomey@barrack.com

*Attorneys for Plaintiff*